UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MEMORIAL HOSPITAL AND HEALTH CARE CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 3:18-cv-00225-RLY-MPB |
| HOUSTON INTERNATIONAL INSURANCE GROUP, HIIG ACCIDENT & HEALTH, GREAT MIDWEST INSURANCE COMPANY, and WEBTPA, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT WEBTPA'S MOTION TO DISMISS**

Plaintiff, Memorial Hospital and Health Care Center, filed a Complaint alleging in part that WebTPA breached the parties' contract. WebTPA moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **GRANTED**.

**I.  Background**

The Hospital sponsors an ERISA self-funded employee welfare benefit plan that provides benefits to qualified employees (the "Plan"). During the relevant time period, the Hospital purchased a stop-loss medical insurance policy from Defendant Great Midwest Insurance Company, the coverage of which was triggered upon the exhaustion of the Hospital's self-insured retention in a given year. The Hospital also had an

1

Administrative Services Agreement ("ASA") with Defendant WebTPA, the third-party administrator which performed claims-processing services related to the Plan.

The 2016 stop-loss policy contained Exclusion No. 5 which provided that the policy would not pay for treatments, services, and the like for which an eligible claim for payment was paid in excess of the reasonable and customary charge. The policy was changed prior to issuance to limit the application of Exclusion No. 5 to out-of-network claims.

In December 2015, a covered employee of the Hospital delivered twins who were born premature with multiple serious health conditions. Both infants required extensive stays in neonatal intensive care units and acute care admissions at hospitals located in Cincinnati and Chicago. The infants' medical bills totaled $2,300,000 (which apparently exceeded the Hospital's self-insured retention for 2015). The Hospital submitted claims for reimbursement from Great Midwest. Defendant HIIG Accident & Health, an affiliate of Great Midwest, performed an audit of the medical care received by the twins. The audit resulted in a 70% reduction in reimbursement to the Hospital. The Hospital appealed the decision and lost.

The Hospital brings claims for breach of contract against Houston International Insurance Group and its subsidiaries HIIG Accident & Health, and Great Midwest for their failure to honor Exclusion No. 5 and for improperly denying or reducing claims based upon a flawed audit process. The Hospital also brings a claim for breach of contract against WebTPA for its failure to carry out its obligations and duties under the ASA. The present motion relates only to the Hospital's claim against WebTPA.

## II. Discussion

The Complaint alleges that WebTPA "breached the terms of the ASA by failing to properly carry out its obligations and duties under the Agreement." (Filing No. 1, Compl. ¶ 34). In its motion, WebTPA argues the Hospital fails to allege that WebTPA had any obligation or duty concerning the processing or payment of medical stop-loss claims under the *Great Western stop-loss policy*. The Hospital responds that its claim is this: "WebTPA had a duty *under the ASA* to properly provide utilization review and to determine whether bills submitted to the Hospital by the healthcare providers were appropriate for payment by the Hospital in the first instance." (Filing No. 21, Response at 4) (emphasis added).

Under the terms of the ASA, WebTPA's administrative responsibilities included the determination of "benefits payable per claim in accordance with the Plan." (ASA, §§ 2.2(d)). In other words, if the claim was payable, it was paid by WebTPA according to the Plan document. (*See id.*, § 2.3(c)). While WebTPA was obligated to use its best efforts to notify the Hospital of any overpayment for claims paid, those payments were issued at the sole direction and authority of the Hospital. (*Id.*, §§2.3(e), § 3.2(a)[1]). "Financial liability for all payments made under the Plan" remained with the Hospital. (*Id.*, § 3.2(c); *see also id.*, § 1.5 ("The [Hospital] has total responsibility for payment of

---

[1] Section 3.2(a) of the ASA provides that the Hospital "[r]etains all responsibilities of Plan Employer, Plan Administrator, and Named Fiduciary, as those terms are defined in ERISA. As such, [the Hospital] retains full discretionary control, authority, and responsibility in the maintenance of a compliant Plan Document, the determination of benefits, and the operation and administration of the Plan." (*Id.*).

3

claims under the Plan and all expenses incidental to the Plan.")).  Thus, even if WebTPA's role was to determine whether healthcare bills submitted to the Hospital were appropriate—a claim WebTPA denies—WebTPA may not be held liable for those payments pursuant to the terms of the APA.

Next, WebTPA argues that under the explicit terms of the ASA, the Hospital has no right to recover against it for the damages alleged.  The damages at issue here are the losses incurred by the Hospital due to Great Midwest's denial of its stop-loss medical claims.  Pursuant to the terms of § 2.7(c) of the ASA, WebTPA is not responsible, financially or otherwise, "for the payment or denial of a stop loss claim."  (Filing No. 1-2, ASA, § 2.7(c)).  Section 2.7(c), the Hospital argues, is an affirmative defense which is an inappropriate basis to grant a motion to dismiss.

Typically, a complaint does not have to anticipate an affirmative defense.  *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010).  Nevertheless, courts may dismiss a complaint if its allegations establish the affirmative defense.  *See Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 842 (7th Cir. 2017) (upholding dismissal based on statute of limitations because the "complaint contain[ed] everything necessary to establish that the claim [wa]s untimely").  Here, the ASA, which is attached to the Complaint and central to its claims, plainly establishes that WebTPA may not be held legally responsible for Great Midwest's denial of the Hospital's stop loss claims.  Accordingly, the Hospital fails to allege a plausible claim for relief for breach of the ASA.

### III. Conclusion

The court finds the Complaint against WebTPA should be dismissed pursuant to Rule 12(b)(6). Accordingly, WebTPA's Motion to Dismiss (Filing No. 19) is **GRANTED**.

**SO ORDERED** this 13th day of May 2019.

                                    RICHARD L. YOUNG, JUDGE
                                    United States District Court
                                    Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.